1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                 DISTRICT OF NEVADA

8                                       * * * * *

9   BARRY A. FISHER, Receiver,            )
                                          )
10                        Plaintiff,      )          02:99-CV-0377-LRH (RAM)
                                          )
11  vs.                                   )
                                          )                  ORDER
12  DANIEL L. STANGO, an individual;      )
    MORGAN DANIELLE CORP, a Nevada        )
13  corporation,                          )
                                          )
14                        Defendants.     )
    _____)

15

16          On April 27, 2005, Plaintiff Barry A. Fisher (hereinafter the "Receiver"), filed a Motion

17  for Contempt against Daniel Stango ("Stango"), Morgan Danielle Corp. and Defendant' legal

18  counsel, David Winter ("Winter").  In the alternative, the Receiver asked the court to issue an

19  order to show cause why Stango, Morgan Danielle Corp., and Winter should not be held in

20  contempt for their failure to comply with the terms of the final judgment issued by this court on

21  April 24, 2003 and the turnover order issued by this court on January 24, 2005 (hereinafter the

22  "January 24th Turnover Order"), granting the Receiver's motion for turnover in aid of execution

23  of the final judgment, and directing that any money diverted by Stango and his legal counsel,

24  Winter, be turned over to the Receiver.

25          In response to the Receiver's motion, on March 7, 2006 the court issued an order to show

26  cause why Stango and Winter should not be held in contempt.  No responsive pleading was filed

27  by Winter or Stango either admitting or denying the accusations made in the Receiver's

28  application for order to show cause.  No objection was made by Stango or Winter to any of the

    evidence submitted by the Receiver, and the Court has received and considered such evidence.

An evidentiary hearing was held on June 13, 2006, at which time the parties offered evidence in support of and in opposition to the Receiver's motion, including the testimony of Winter and Stango.  Having heard and considered the evidence, the court finds that both Stango and Winter have wilfully and intentionally violated, and have engaged in a course of conduct designed and intended to conceal assets from the Receiver and refuse to obey the terms of the judgment and the January 24th Turnover Order. Accordingly, the court finds Stango and Winter to be in civil contempt of the orders of this court. The court makes the following findings based upon the evidence at the hearing and the documentary evidence submitted by the Receiver:

1.      Plaintiff Barry A. Fisher, Receiver obtained his Judgment in this action against Stango on April 24, 2003 (the "Judgment").  The Judgment is for the principal sum of $1,464,517.80. Further, the Judgment transferred Defendants' interest in three properties to the Receiver:  (1) Petro Bay Pirate Expeditions, Inc., dba Cabo Expeditions ("Cabo Expeditions"), (2) Deliska or Deliska West, or any other company using the name Deliska (collectively"Deliska") and (3) the real property at 7122 Parasol Lane, Las Vegas, Nevada (the "Parasol Property").  The Judgment specifically restrains and enjoins Stango and his counsel David Winter from transferring his interest in these properties, or disposing of any part of the assets of Cabo Expeditions, or taking actions that would affect the value of Defendants' financial interest in the company.  Stango and Winter are also enjoined from doing any act which would impair, defeat or divert the proceeds of Cabo Expeditions.  The Judgment also provides that Defendants' interest in distributions or profits from Cabo Expeditions are subject and subordinate to Receiver's interest, and requires Defendants to deliver to Receiver all distributions or profits from Cabo Expeditions.  Paragraph 4 of the Judgment gives Receiver an equitable lien, constructive trust and superior interest in and to any interest Defendants have in the proceeds. Paragraph 5 provides that within 30 days after entry of the Judgment, Stango:

> "shall provide plaintiff and file with the court a complete accounting of Stango's and Morgan Danielle Corp.'s use of the Proceeds, including but not limited to all transfers and disbursements, both into and out of Cabo Expeditions and Deliska, and the sums received in connection with the refinancing of the Las Vegas residence and the refinancing and sale of the property at 1949 N.W. Cerritos, Palm Springs, California". . .

2

2.      On January 24, 2005, this Court issued the January 24th Turnover Order granting the Receiver's motion for turnover order in aid of execution on the Judgment and directing that any money diverted by Daniel Stango and David Winter, his counsel, from Cabo Expeditions be turned over to the Receiver.

3.      Stango was served with a copy of the Judgment and knew that he was required to provide Plaintiff and file with the Court a complete accounting of his use of the Proceeds, including, but not limited to, all transfers and disbursements both into and out of Cabo Expeditions and Deliska, as well as sums received in connection with the refinancing of the Parasol Property.  Stango has never provided Plaintiff or filed with the Court the Court-ordered accounting.

4.      Both prior to and following the January 24th Turnover Order, Stango and Winter engaged in an elaborate shell game designed to conceal assets and obstruct the Receiver's ability to ascertain them, all in violation of the Judgment and the January 24th Turnover Order. As set out in more detail below, Stango has willfully and intentionally violated virtually every term of the Judgment; Stango has engaged in a course of conduct designed and intended to perpetrate a fraud on the court and upon the Receiver; and Stango has steadfastly refused to provide Receiver with an accounting as required by Paragraph 5 of the Judgment.

5.      Also as set out in more detail below, Attorney Winter has not only been an active participant in Stango's contempt and in Stango's fraudulent activities, he has taken for himself large sums of money that the Judgment directed be paid to the Receiver.  Winter orchestrated the contempt and devised the plan to divert and conceal the assets of Stango and Cabo Expeditions. Further, Winter's conduct before and during the trial of this matter was designed and intended to conceal material evidence and to perpetrate a fraud on the court in violation of his duty and responsibility as an officer of the court.  Indeed, the scheme to conceal and divert Stango's assets, including income Stango derived from Cabo Expeditions commenced even before the trial in this matter, but was concealed from the Court and opposing counsel at and after the trial.

///

///

3

6.      As a result of these concealments and obstructions and Stango's refusal to account and his filing of a bankruptcy, Plaintiff has been unable to collect on his Judgment.  Plaintiff's ability to uncover the full extent of Stango's and Winter's improper secreting of Proceeds has also been seriously impaired.  As a result, the amounts provided in these findings of the Proceeds which have been diverted by Stango and Winter are likely well understated, requiring further orders for accountings by both Stango and Winter.  Further, the intransigence demonstrated by Stango and Winter may well lead to a reference of this matter for criminal contempt proceedings.

7.      In particular, Stango, with Winter's advice and assistance, engaged in a number of fraudulent transfers of his assets to hide his real, continuing ownership from the Receiver.  The initial phony transfer occurred before the Judgment, while this case was in the "trial stack."  At a point when Stango was about to go to trial for receiving fraudulent transfers with liability of well over $1 million, Stango and Winter concocted a phony transfer of Stango's three principal assets to Scott Sibley for $35,000, where the Parasol property alone was worth $170,000 and the Cabo Expeditions interest paid $10,000 to $20,000 per month to Stango (which was then diverted to Winter) and Deliska, even after the transfer, paid Stango a salary of $8,000 per month.

8.      Despite these purported transfers by Stango to Sibley, however, Sibley has never been to the Parasol Property; Stango has made all payments on the mortgage, taxes and insurance; the insurance has never been changed to reflect ownership interest of Sibley; the mortgage remains in Stango's name; and all repairs and maintenance to the Parasol Property are done by Stango.

9.      Furthermore: even after the purported transfer of the Cabo stock, Stango continued to receive an income from Cabo Expeditions; at no time did Sibley ever request, nor did Stango provide to Sibley, financial documents or information concerning Cabo Expeditions; and Stango's lawyer Winter has diverted assets of Cabo Expeditions, having receiving over $214,000 since the Judgment was entered.

10.      Prior to his purported transfer to Sibley, Stango was the owner and holder of 900,000 shares of common stock of Deliska.  Deliska is a chocolate manufacturing company based in Quebec, Canada.  Since September 11, 2001, he has been the President of Deliska and

1   has been receiving upwards of $8,000.00 per month in compensation for his duties as President.

2   As President, Stango controls the business of Deliska. Furthermore, Sibley neither requested, nor

3   was provided, any financial documents or information concerning Deliska.

4          11.    The transfers to Sibley were arranged by Attorney Winter in anticipation of an

5   adverse judgment in favor of the Receiver and with intent to hide Stango's assets from the

6   Receiver.  Winter introduced Stango to Sibley. Sibley was Winter's long-time friend and

7   office-mate. At the time of these transfers, Winter owed Sibley a large sum of money.  Winter

8   prepared and notarized the grant deed for the transfer.  The form of the lease agreement used in

9   connection with the transfer of the Parasol Property is something Winter and Sibley have shared

10  over the years.

11         12.    Just a month after the Stango/Sibley "loan" and the purported transfer of stock as

12  collateral, Winter began to take a number of additional steps to disguise Stango's ownership of

13  Cabo Expeditions and to divert the Proceeds of the enterprise.  Cabo Expeditions is a business

14  located in Cabo San Lucas, Mexico, and managed for Stango by a Mexican national whose name

15  is Oscar Ortiz.  Cabo Expeditions derives income from a variety of revenue sources in Mexico.

16  Princess, Royal Caribbean and Carnival cruise lines pay for their customer's whale watching,

17  zodiac adventures, snorkeling, kayaking and para-sailing.  In addition, walk-up customers pay for

18  whale watching, snorkeling off the beach and kayaking.  Stango's personal bank records confirm

19  that Stango received income from Cabo Expeditions in the form of regular wire transfers from

20  Princess Cruises. Payments by Princess Cruises to Cabo Expeditions started in January 2001 and

21  continued through at least sometime in 2005.

22         13.    As part of his scheme to disguise Stango's ownership of Cabo Expeditions and to

23  divert the Proceeds of the enterprise, Winter incorporated a "new" Cabo Expeditions in Nevada

24  and Winter became the North American manager. As North American manager, Winter was paid

25  $3,000 per month. Winter opened bank accounts for Cabo Expeditions in Nevada.  In the

26  summer of 2002, the wire transfers from the cruise ship lines stopped going into Stango's

27  personal bank account and started being deposited in the bank account Winter had set up for

28  Cabo Expeditions in Nevada at Wells Fargo Bank.

14.   As the U.S. administrative manager, Winter had authority to handle all the finances and investments of Cabo Expeditions.  Royal Caribbean and Princess began sending wire deposits to the Cabo Expeditions account in Nevada (Carnival Cruise line paid at the pier in Cabo San Lucas). Winter controlled the money that was wired into the Cabo Expeditions' bank account by Princess and Royal Caribbean cruise lines. .

15.   The payments in October 2002 through April 2003 were sent to Cabo Expeditions, in care of David Winter, P. O. Box 217, Netarts, Oregon, and thereafter and from May 2003 payments were sent to Cabo Expeditions, in care of David Winter's post office box in Zephyr Cove, Nevada.

16.   The payments from Princess Cruises alone to Cabo Expeditions from October 2002 through April 2003 totaled at least $100,000.00 and the payments after entry of the Judgment (from May 2003 through May 2004) totaled $42,998.00.  Payments made by Princess Cruises to Cabo Expeditions were mailed to David Winter's post office box and then deposited into a Cabo Expeditions' bank account at Wells Fargo Bank.

17.   $214,383.80 was deposited into the Cabo Expeditions Wells Fargo bank account after the Judgment was entered.  Stango and Winter were required by the Judgment to pay all of this money over to the Receiver.  They did not do so in contempt of the Judgment and the later January 24th Turnover Order.

18.   In August 2004, Plaintiff caused subpoenas to be issued to Wells Fargo Bank for the records of the Cabo Expeditions' bank account in Nevada.  Thereafter, on September 17, 2004, Winter dissolved the Cabo Expeditions corporation in Nevada, closed the Cabo Expeditions' bank account at Wells Fargo bank, and wired the remaining balance of $35,005.44 to an account in Mexico.  Also on September 17, 2004, Winter sent a letter to Princess Cruises with instructions to send all future payments to the account in Mexico.  Winter's letter does not ask Princess to send the payments to a company called Cabo Adventures, it asks Princess to send the payments to Cabo Expeditions.

///

///

6

1    19.    After dissolving Cabo Expeditions in Nevada, closing the Cabo Expeditions' bank

2    account in Nevada, and diverting all future payments by Princess Cruises to an account in

3    Mexico, Winter continued to help Ortiz with the invoicing for the Princess account.

4    Furthermore, the "new" Cabo Adventures continued doing business in Mexico under the "old"

5    Cabo Expeditions' name.

6    20.    Despite Winter's efforts, each of the Cabo corporations were and are alter egos of

7    Cabo Expeditions and were and are subject to the orders in the Judgment and January 24th

8    Turnover Orders, including but not limited to the injunctions against transfer of Stango's interest

9    or disposing of the assets, or diverting the Proceeds, and both Stango and Winter at all times

10   were aware of this.

11   21.    Winter used monies which belonged to Cabo Expeditions to pay his personal

12   expenses, some expenses for Scott Sibley, and to pay fees to Stango's bankruptcy counsel, C.

13   Andrew Wariner.  The money taken from Cabo Expeditions' account for personal use by Winter

14   totals approximately $152,648. Winter used the money for a variety of things including a new

15   car, furniture, computer, to pay his legal subcontractors, to pay mortgage payments, maintenance

16   on Scott Sibley's airplane, and to pay back a debt Winter owed Wolfgang Wimpissinger in the

17   amount of $79,488.58.

18   22.    Stango remains the owner of the beneficial ownership in the Parasol Property

19   (subject to the Receiver's interest through the Judgment) and Sibley's holding of legal title a

20   simply a ruse to defraud the Receiver.  Stango never effectively transferred his interest in Cabo

21   Expeditions. Stango did not transfer beneficial ownership of the Deliska stock.

22   23.    To date, neither Stango nor Winter have delivered any of the money which they

23   took from Cabo Expeditions between April 24, 2003, and September 2004 in clear violation of

24   the Judgment and in further violation of the January 24th Turnover Order.

25   24.    Winter has also violated the Judgment by taking further steps to prevent the

26   Receiver from collecting on the Judgment, including orchestrating the removal of assets outside

27   the United States.

28   ///

7

25.     The January 24th Turnover Order specifically states: "Defendant and defendant's counsel are ordered to turn over all money which they have received in violation of this Court's prior judgment". In addition to flouting this order by not paying such money, Winter evidenced disrespect and contempt by refusing in his deposition following the order to acknowledge his participation in the diversion scheme and by claiming that the "order had to do with the Cabo Expeditions that, in my opinion, is the one that went in the toilet after Mr. Stango removed all the funds from it without paying his employees and his - -  effectively, his suppliers."

26.     This "in the toilet" explanation is the same response that Stango and Winter made unsuccessfully in opposition to the motion that resulted in the January 24th Turnover Order. Winter's claim that  the Cabo Expeditions of the Judgment is not the same Cabo Expeditions for which he acted as manager, collecting over $214,000 and disbursing more than $150,000 to his own personal use is transparently false: the companies have the same name, the same business, using the same assets, from the same location, with the same person running the operation. Instead of Stango fronting the operation, his lawyer now fronts it.

27.     The contempt of both Winter and Stango has been established by clear and convincing evidence.

28.     Winter is liable to the Receiver for the $214,383.80 that the Receiver has shown was diverted from Cabo Expeditions and for such further sums as the Receiver may later show based on the accountings ordered below or such other evidence as the Receiver may advance.

29.     Winter was present and represented Stango at his debtor examination conducted by Plaintiff on August 12, 2003. At that debtor examination, when Stango was asked if he had any other documents relating to either Cabo Expeditions or joint business ventures, he and Winter both stated that they did not have further documentation. No documentation was produced concerning the contract with Princess Cruises, the payments which were being made by Princess Cruises, or the bank account maintained by Winter on behalf of Cabo Expeditions at Wells Fargo Bank. These false statements and Stango's refusal to provide the court-ordered accounting impeded the Receiver's collection of information and required the Receiver to expend substantial sums to get the information through other means and allowed Stango and Winter to

8

1    divert Proceeds.

2         30.    The accounting required by the Judgment continues to be necessary to uncover

3    further diversions in violation of the court's orders, and aid in recovery of the Judgment for the

4    benefit of the defrauded investors, on whose behalf the Receiver acts. Stango's failure to account

5    as required by the Judgment has created substantial difficulty for the Receiver in trying to recover

6    assets awarded by the Judgment and has increased the Receiver's costs.  The Receiver has had to

7    resort to other discovery devises to obtain the information Stango was required by the Judgment

8    to provide - these devises included two judgment debtor exams, and subpoenas on Princess,

9    Royal, Wells Fargo and Winter.  The Receiver has had to defend his discovery by opposing

10   Defendants' motion to quash the subpoenas. Winter and Stango each filed for bankruptcy

11   protection after the Judgment was entered, listing the Receiver as a creditor. This necessitated the

12   receiver having to retain counsel and file motions in each bankruptcy and obtain orders lifting the

13   automatic stay to proceed with the Receiver's contempt action pending in this action.  These

14   costs should be borne by Stango and Winter whose disobedience of the Judgment have caused

15   the expenditures.

16        31.    The failure to account has had the further unfortunate result that the Receiver was

17   unable to seize the substantial amount of funds that has flowed through Cabo Expeditions. One

18   of the things that is very clear from the Receiver's discovery - Cabo Expeditions has made a great

19   deal of money, that with Winter's assistance, has disappeared or been dissipated.  Furthermore,

20   there likely have been payments to Cabo Expeditions from other cruise lines, hotels, other tourist

21   industry companies and tourists that plaintiff has not discovered, but would have uncovered had

22   Defendants provided an accounting and had Stango and Winter produced all records relating to

23   Stango's assets.

24        32.    Stango has no valid excuse for his failure to account.  He was specifically

25   reminded of this obligation at both sessions of his judgment debtor exam and by the Receiver's

26   prior motion which resulted in the January 24th Turnover Order.  Defendants have argued that

27   they substantially complied with the accounting requirement when Stango turned over some

28   documents in response to document demands made in connection with the Receiver's noticing of

9

1   Stango's judgment debtor exam.  This loose pile of papers does not constitute the mandatory

2   accounting.

3        33.    Indeed, a much more detailed accounting requirement is necessary, directed to

4   both Stango and Winter as a result of their contempt, their fraudulent transfers and bad faith in

5   this action. It took the Receiver almost two years and many thousands of dollars to learn of the

6   Cabo diversions set out above because of Stango's refusal to account.

7        34.    The costs of the Receiver associated with prosecuting this motion for contempt,

8   with discovery unraveling their diversion scheme, and with seeking orders to obtain the diverted

9   funds total $85,455.55. Stango and Winter are jointly and severally liable for payment this

10  amount to the Receiver.

11       35.    Winter's violations of his obligations to the Court go beyond his contempt of the

12  Judgment and the January 24th Turnover Order.  Winter, in violation of Rule 11(b) of the Federal

13  Rules of Civil Procedure, misled both the Receiver and the Court in filings in this action,

14  concealing and disguising Stango's transfers despite the fact that ownership of these assets was a

15  major issue in the trial that followed a few months after the transfers occurred.

16       36.    Winter deliberately refrained from advising either the Receiver or the Court of

17  Stango's transfers despite the fact that ownership of these assets was a major issue in the trial

18  that followed a few months after the transfers occurred.  Worse, Winter made misleading

19  statements concerning Stango's ownership of the Parasol Property and the stock in Deliska and

20  Cabo Expeditions in the joint pretrial order filed with the court. The parties there stipulated that

21  Stango acquired title to the Parasol Property on April 10, 1997 and that Stango purchased an

22  ownership interest in Cabo Expeditions in February 1998.  Winter listed as one of Defendants'

23  issues of fact to be tried and determined at trial, "whether an actual controversy has arisen and

24  exists between Plaintiff and Defendants regarding the respective rights of the parties in and to the

25  single family residence dwelling at 7122 Parasol Ln...".  The parties agreed that an issue of law to

26  be tried and determined at trial was "Whether Plaintiff is entitled to enforce an equitable lien

27  and/or constructive trust against the single family residence at 7122 Parasol Ln...".   In

28  Defendants' Proposed Findings of Fact and Conclusions of Law, Winter acknowledged that on

April 10, 1997, Danielle Morgan Corp. transferred title to the Parasol Property to Stango; and that Stango purchased an ownership interest in Cabo Expeditions in February 1998.  In all of this, there is no reference, nor did Winter advise the court that Stango transferred the Parasol Property, Deliska and Cabo stock to Sibley on or about May 28, 2002, or that the "new" Cabo Expeditions was incorporated in Nevada on June 24, 2002.

37.   Winter continued his violations of his obligations to the Court following the trial. In Winter' objections to Plaintiff's proposed judgment, which was filed on April 9, 2003, Winter represented that "Stango never had a controlling interest in Deliska West".  Winter went on to say, "Stango does not control said entity, but in fact only holds a minority interest in same..." These statements were false and designed to conceal the transfer to Sibley.

38.   In Defendants' March 2003 post-trial brief, Winter stated:

> Plaintiff has introduced no evidence concerning the properties Plaintiff seeks equitable lien against, or to be held in constructive trust, that Defendants, in 2003, still own or control said interest. Without a modicum of evidence to the court concerning the current ownership of the assets desired to be attached, the court would be exercising jurisdiction over property potentially claimed by third parties not before the court, which would be improper.  FRCP 19.

39.   This was Winter's first reference in the court record to Fed.R.Civ.P. 19.  Rule 19 governs the circumstances under which persons must be joined as parties to the action.  The rule has particular importance in federal actions because joinder of parties can have profound effects on the Court's subject matter jurisdiction, and the rights of the parties already involved in the litigation.  At no time after the May 2002 transfers from Stango to Sibley did Winter ever advise the Court or opposing counsel Stango no longer owned the house and stock that were at issue in the litigation.

40.   Stango and Winter have teamed up to hinder, delay and defraud the Receiver in his efforts to collect on the Judgment.  Unless restrained and tightly directed by orders issued by this Court, their contemptuous conduct will continue unabated, and Stango and Winter will receive the benefits of the Parasol Property, Cabo Expeditions, Delika and all of the money to which the Receiver is entitled as constructive trustee.

///

11

The Receiver has moved for, and the court hereby grants the following orders for sanctions and to effectuate the judgment:

1.      Within 15 days, Winter shall turn over to the Receiver $214,383.80, and all other funds or property that he has received after the Judgment in any capacity from or on behalf of Stango, Morgan Danielle Corp., Cabo Expeditions, Deliska, or from any other entity in which Stango holds or has held an interest. For purposes of this Order, "Cabo Expeditions" shall include Petro Bay Pirate Expeditions, Inc., dba Cabo Expeditions, the "new" Cabo Expeditions that Winter incorporated in Nevada, Cabo Adventures, and any other successor to the name or assets of Cabo Expeditions.

2.      Within 15 days, Stango shall turn over to the Receiver money in the amount of any funds or property that he has received after the Judgment in any capacity from or on behalf of Winter, Morgan Danielle Corp., Cabo Expeditions, Deliska, or from any other entity in which Stango holds or has held an interest.

3.      Within 15 days, Winter and Stango shall each file with the court and serve on the Receiver, a detailed accounting of any and all money and property they have received in any capacity from or on behalf of any of the following: Stango, Morgan Danielle Corp., Cabo Expeditions, Deliska, any other entity in which Stango holds or has held an interest. At a minimum, the accounting must show for each transfer of money or property:

        (a)      the transferor (name, address and telephone number) of the money or property;

        (b)      the reason for the transfer;

        (c)      the capacity in which Winter or Stango received the transfer;

        (d)      any documents backing up the transfer (agreements, invoices, checks, etc.); and

        (e)      trace the use of the funds into other assets as far as possible.

4.      Within 15 days, Winter and Stango shall each file with the court and serve on the Receiver a detailed accounting of any and all money and property received by Cabo Expeditions from the time of its formation to the present.  At a minimum, for each different Cabo entity,  the

12

accounting must:

(a)     show all funds and other property going both into and out of the entity;

(b)     identify the transferor (name, address and telephone number) of all transfers of over $500 to the entity;

(c)     identify the transferee (name, address and telephone number) of all transfers of over $500 from the entity,

(d)     show the reason for each transfer of over $500;

(e)     describe the consideration for each transfer of over $500;

(f)     provide any documents backing up each transfer of over $500 (invoices, checks, etc.);

(g)     where the transferor is Stango, Winter, Sibley, Deliska, Morgan Danielle Corp. or another entity in which one of these parties has an interest, trace the use of the funds into other assets as far as possible;

(h)     where the transferee is Stango, Winter, Sibley, another Cabo Expeditions entity, Deliska, Morgan Danielle Corp. or another entity in which one of these parties has an interest, trace the use of the funds into other assets as far as possible;

(i)     identify what physical assets (i.e. computers, boats, equipment, etc.), real property and leases the entity had on each of the following dates: May 1, 2002, September 1, 2002, January 1, 2003, April 24, 2003, August 1, 2004, October 1, 2004, March 1, 2005, September 1, 2005 and the date of the accounting;

(j)     in each case where physical assets were acquired, identify the assets with particularity and:

      (i)     identify the name, address and telephone number of the person or entity from which they were acquired;

      (ii)     identify the consideration given for the asset;

      (iii)     identify the source of the consideration given for the asset; and

13

1            (iv)    provide copies of all documents that memorialize the transfer of

2                   the asset to the Cabo entity;

3     (k)    in each case where physical assets were transferred to another Cabo entity

4         or to a third party, identify the assets with particularity and:

5            (i)    identify the name, address and telephone number of the person or

6                   entity acquiring the asset;

7            (ii)    identify the consideration given for the asset;

8            (iii)    to the extent known, identify the source of the consideration given

9                   for the asset; and

10            (iv)    provide copies of all documents that memorialize the transfer of

11                   the asset.

12     5.    Within 15 days, Winter and Stango shall pay to the Receiver the sum of

13 $85,455.55, as sanctions, to compensate the Receiver for costs and fees incurred to bring and

14 prosecute this motion, to bring the prior motion which resulted in the January 24th Turnover

15 Order, to obtain relief from the automatic stay in the Stango and Winter bankruptcy actions, and

16 to undertake additional discovery concerning Defendants' and Winter's transfers in violation of

17 law and the Judgment. This obligation to pay is joint and several.

18     6.    Stango and Winter shall deliver written instructions within 10 days hereof to all

19 persons and entities who presently owe any money to  Cabo Expeditions directing them to pay all

20 moneys now and hereafter due to Plaintiff.

21     7.    Winter and Stango shall deliver written instructions with all future billings to all

22 persons and entities owing money to Cabo Expeditions directing them to pay all moneys then and

23 thereafter due to Plaintiff.

24     8.    Copies of the instructions and billings identified in paragraphs 6 and 7 above shall

25 be delivered by Winter and Stango to Plaintiff at the times they are sent, along with proof of

26 service.

27 ///

28 ///

14

9.      Stango and Winter shall deliver within 10 days hereof the names, addresses and telephone numbers of all persons and entities who presently owe any money to Cabo Expeditions.

10.     The Receiver may deliver written instructions on behalf of Cabo Expeditions to all persons and entities who presently or hereafter owe any money to Cabo Expeditions directing them to pay all moneys now and hereafter due to Plaintiff.

11.     Stango and Winter shall fully cooperate in the Receiver's efforts to gain title and possession of the property at 7122 Parasol Lane, Las Vegas, Nevada, and the stock of Cabo Expeditions and Deliska, including but not limited to signing transfer documents and obeying all reasonable instructions of the Receiver in this regard.

12.     Within 15 days, Stango and Morgan Danielle Corp. shall each file with the court and serve on the Receiver a full and detailed accounting of their assets, debts and liabilities since 1997 to the present. At a minimum, the accounting must include detail concerning the source of all assets owned or possessed at any time during the period, and where the asset is no longer in their possession, how the asset was disposed of, including for each entity in which either of these Defendants has held a direct or indirect interest during the period 1997 to the present, the accounting must show: (a) the extent of ownership and time periods of ownership, (b) the amount and source of funds for purchasing the interest, (c) if the interest changed at any time, describe how it changed, (d) if any interest was sold or transferred, the name and address of the transferee, the consideration for the transfer and trace Defendants' use of the consideration.  The accounting must list all assets as of the first day of each quarter from January 1, 1997 to the present.  Further, for each entity in which either of these Defendants has held a direct or indirect interest during the period 1997 to the present, the accounting must show:

(a)     show all funds and other property going both into and out of the entity;

(b)     identify the transferor (name, address and telephone number) of all transfers  of over $500 to the entity;

(c)     identify the transferee (name, address and telephone number) of all transfers  of over $500 from the entity,

15

(d)    show the reason for each transfer of over $500;

(e)    describe the consideration for each transfer of over $500;

(f)    provide any documents backing up each transfer of over $500 (invoices, checks, etc.);

(g)    where the transferor is Stango, Winter, Sibley, Deliska, Morgan Danielle Corp. or another entity in which one of these parties has an interest, trace the use of the funds into other assets as far as possible;

(h)    where the transferee is Stango, Winter, Sibley, Cabo Expeditions, Deliska, Morgan Danielle Corp. or another entity in which one of these parties has an interest, trace the use of the funds into other assets as far as possible;

(i)    identify what physical assets (i.e. computers, boats, equipment, etc.), real property and leases the entity had on each of the following dates: May 1, 2002, September 1, 2002, January 1, 2003, April 24, 2003, August 1, 2004, October 1, 2004, March 1, 2005, and the date of the accounting;

(j)    in each case where physical assets were acquired, identify the assets with particularity and:

    (i)    identify the name, address and telephone number of the person or entity from which they were acquired;

    (ii)    identify the consideration given for the asset;

    (iii)    identify the source of the consideration given for the asset; and

    (iv)    provide copies of all documents that memorialize the transfer of the asset to the Cabo Expeditions entity;

(k)    in each case where physical assets were transferred to another Cabo Expeditions entity or to a third party, identify the assets with particularity and:

    (i)    identify the name, address and telephone number of the person or entity acquiring the asset;

    (ii)    identify the consideration given for the asset;

16

1                 (iii)     to the extent known, identify the source of the consideration given

2                               for  the asset; and

3                 (iv)     provide copies of all documents that memorialize the transfer of

4                               the  asset.

5         13.     Within 15 days, Winter shall file with the court and serve on the Receiver a full

6 and detailed accounting of his assets, debts and liabilities since 2002 to the present. At a

7 minimum, the accounting must include detail concerning the source of all assets owned or

8 possessed at any time during the period, and where the asset is no longer in his possession, how

9 the asset was disposed of, including for each entity in which Winter has held a direct or indirect

10 interest during the period 2002 to the present, the accounting must show: (a) the extent of

11 ownership and time periods of ownership,

12 (b) the amount and source of funds for purchasing the interest, (c) if the interest changed at any

13 time, describe how it changed, (d) if any interest was sold or transferred, the name and address of

14 the transferee, the consideration for the transfer and trace Winter's use of the consideration.  The

15 accounting must list all assets as of the first day of each quarter from 2002 to the present.

16 Further, for each entity in which Winter has held a direct or indirect interest during the period

17 2002 to the present, the accounting must show:

18                 (a)     show all funds and other property going both into and out of the entity;

19                 (b)     identify the transferor (name, address and telephone number) of all

20                               transfers  of over $500 to the entity;

21                 (c)     identify the transferee (name, address and telephone number) of all

22                               transfers  of over $500 from the entity,

23                 (d)     show the reason for each transfer of over $500;

24                 (e)     describe the consideration for each transfer of over $500;

25                 (f)     provide any documents backing up each transfer of over $500 (invoices,

26                               checks, etc.);

27                 (g)     where the transferor is Stango, Sibley, Deliska, Morgan Danielle Corp. or

28                               another entity in which one of these parties has an interest, trace the use of

the funds into other assets as far as possible;

(h) where the transferee is Stango, Sibley, Cabo Expeditions, Deliska, Morgan Danielle Corp. or another entity in which one of these parties has an interest, trace the use of the funds into other assets as far as possible;

(i) identify what physical assets (i.e. computers, boats, equipment, etc.), real property and leases the entityhad on each of the following dates: May 1, 2002, September 1, 2002, January 1, 2003, April 24, 2003, August 1, 2004, October 1, 2004, March 1, 2005, and the date of the accounting;

(j) in each case where physical assets were acquired, identify the assets with particularity and:

    (i) identify the name, address and telephone number of the person or entity from which they were acquired;

    (ii) identify the consideration given for the asset;

    (iii) identify the source of the consideration given for the asset; and

    (iv) provide copies of all documents that memorialize the transfer of the asset to the Cabo Expeditions entity;

(k) in each case where physical assets were transferred to another Cabo Expeditions entity or to a third party, identifythe assets with particularity and:

    (i) identify the name, address and telephone number of the person or entity acquiring the asset;

    (ii) identify the consideration given for the asset;

    (iii) to the extent known, identify the source of the consideration given for the asset; and

    (iv) provide copies of all documents that memorialize the transfer of the asset.

///
///

18

14.     Within 15 days, Winter shall file with the court and serve on the Receiver a full and detailed accounting of the assets, debts and liabilities of Cabo Expeditions since 2002 to the present. At a minimum, the accounting must include detail concerning the source of all assets owned or possessed at anytime during the period, and where the asset is no longer in the company's possession, how the asset was disposed of, including for each Cabo entity, the accounting must show: (a) the ownership and time periods of ownership, (b) if the interest changed at any time, describe how it changed, (c) if any interest was sold or transferred, the name and address of the transferee, the consideration for the transfer and trace the use of the consideration. The accounting must list all assets as of the first day of each quarter from June 1, 2002 to the present.  Further, for each Cabo entity, the accounting must show: (a) all funds and other property going both into and out of the entity, (b) show the payees (name, address and telephone number) of all transfers of over $500 from the entity, (c) show the reason for the transfer, (d) any documents backing up the transfer (invoices, checks, etc.), (e) where the transferor is Stango, Sibley, another Cabo entity, Deliska, Morgan Danielle Corp. or anotherentity in which one of these parties has an interest, trace the use of the funds into other assets as far as possible, and (f) where the beneficiary of the transfer is Stango, Sibley, another Cabo entity, Deliska, Morgan Danielle Corp. or another entity in which one of these parties has an interest, trace the use of the funds into other assets as far as possible. At a minimum, the accounting must:

(a)     identify what physical assets (i.e. computers, boats, equipment, etc.), real property and leases the entityhad on each of the followingdates: May1, 2002, September 1, 2002, January 1, 2003, April 24, 2003, August 1, 2004, October 1, 2004, March 1, 2005, and the date of the accounting;

(b)     in each case where physical assets were acquired, identify the assets with particularity and:

(i)     identify the name, address and telephone number of the person or entity from which they were acquired;

(ii)     identify the consideration given for the asset;

19

| | | | |
|---|---|---|---|
| 1 | | (iii) | identify the source of the consideration given for the asset; and |
| 2 | | (iv) | provide copies of all documents that memorialize the transfer of |
| 3 | | | the asset to the Cabo Expeditions entity; |
| 4 | (c) | | in each case where physical assets were transferred to another Cabo |
| 5 | | | Expeditions entity or to a third party, identify the assets with particularity |
| 6 | | | and: |
| 7 | | (i) | identify the name, address and telephone number of the person or |
| 8 | | | entity acquiring the asset; |
| 9 | | (ii) | identify the consideration given for the asset; |
| 10 | | (iii) | to the extent known, identify the source of the consideration given |
| 11 | | | for the asset; and |
| 12 | | (iv) | provide copies of all documents that memorialize the transfer of |
| 13 | | | the asset. |

14    15.    Within 15 days, Defendants shall furnish to the Receiver all documents regarding
15 any assets they personally had, including any business entity they had an interest in, from 1997
16 up to the present, including all accounts and bank account records into which the assets or
17 proceeds were deposited, whether the accounts are inside or outside the United States.

18    16.    Within 15 days, Winter shall furnish to the Receiver all documents regarding any
19 assets he personally had, including any business entity he had an interest in, from 2002 up to the
20 present, including all accounts and bank account records into which the assets or proceeds were
21 deposited, whether the accounts are inside or outside the United States.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

20

1    17.    Until such time as Winter and Stango comply with the terms of this order, the

2 court reserves the right to issue additional sanctions, including but not limited to, referring the

3 matter for criminal contempt and/or referral of their conduct for criminal prosecution.

4    Plaintiff's request for entry of order of contempt (#143) is hereby GRANTED.

5    The Clerk of the Court shall forward this order to the State Bar of Nevada for such

6 disciplinary proceedings as may be appropriate concerning attorney David Winter.  It is also

7 requested that the State Bar of Nevada forward a copy of this order to any other state bar

8 association in which David Winter is an active or inactive member.

9    It is so ORDERED.

10    DATED this 17th day of August, 2006.

11

12

13    _____
      LARRY R. HICKS
14    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28